# In the United States Court of Federal Claims

No. 20-499C
(Filed under seal: May 3, 2024)
(Reissued: May 15, 2024)

|  |  |
|---|---|
| **GILEAD SCIENCES, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| **UNITED STATES,** | ) ) ) |
| Defendant. | ) ) ) |

Ronald C. Machen, Jr., Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C. for plaintiff Gilead Sciences, Inc.  With him on the briefs were David B. Bassett, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, as well as Vinita C. Ferrera, Emily R. Whelan, George P. Varghese, Timothy A. Cook, and Stephanie Lin, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA.

Walter W. Brown, Senior Litigation Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the United States.  With him on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Scott D. Bolden, Director, Philip Charles Sternhell, Assistant Director, Civil Division, and Carrie E. Rosato, Lucy Grace D. Noyola, Matthew D. Tanner, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, as well as Lena Yueh, Special Counsel, Department of Health and Human Services, Washington, D.C.

**OPINION AND ORDER**[1]

LETTOW, Senior Judge.

Pending before the court is the United States' ("the government's") motion to compel plaintiff, Gilead Sciences, Inc. ("Gilead"), to produce unredacted legal invoices and billing

---

[1] Because of the protective order entered in this case, this opinion was initially filed under seal.  The parties were requested to review the decision and provide proposed redactions of confidential or proprietary information.  Redactions are shown by asterisks enclosed by brackets, *e.g.*, "[***]."

records supporting Gilead's damages contentions.  Def.'s Mot. to Compel ("Def.'s Mot."), ECF No. 186.  In 2020, plaintiff brought a breach of contract action against the government, alleging that the Centers for Disease Control and Prevention ("CDC") was in breach of three Material Transfer Agreements ("MTAs") and two Clinical Trial Agreements ("CTAs").  *See* Compl., ECF No. 1; First Am. Compl. ¶ 1, ECF No. 33.  On November 21, 2022, this court found that the government breached the MTAs.  *See Gilead Scis., Inc. v. United States*, 163 Fed. Cl. 104, 128 (2022).  And on January 18, 2024, this court found that the government breached the CTAs.  *See Gilead Scis., Inc. v. United States*, 169 Fed. Cl. 210, 224 (2024).

Following the court's finding of CTA liability, discovery regarding damages ensued.  *See* Discovery Scheduling Order of Feb. 5, 2024, ECF No. 184.  Now, the government seeks to compel the unredacted legal invoices and billing records upon which plaintiff relied in support of its damages contentions.  Def.'s Mot. at 1.  Plaintiff filed its response on March 28, 2024.  Pl.'s Opp'n to Def.'s Mot. to Compel ("Pl.'s Opp'n"), ECF No. 189.  The government filed its reply on April 4, 2024.  Def.'s Reply, ECF No. 191.  The court held a motion hearing on April 17, 2024.  Hr'g Tr. (Apr. 17, 2024), ECF No. 195.  The motion is fully briefed and ready for disposition.

## BACKGROUND[2]

This action arises from two sets of contractual agreements between plaintiff and the CDC.  Specifically, plaintiff and the CDC, between 2004 and 2014, entered into various MTAs and CTAs, under the terms of which plaintiff agreed to provide proprietary study drugs to the CDC, for the CDC to use in animal and human studies relating to human immunodeficiency virus ("HIV").  *See* First Am. Compl. ¶¶ 5, 6, 45, 50, 54, 60.  With respect to the action before this court, plaintiff alleged that the CDC violated the MTAs by failing to provide notification of inventions which it believed stemmed from research done under these agreements.  *See* First Am. Compl. ¶¶ 119-46.  Moreover, plaintiff alleged that the CDC violated the CTAs when it sought to patent inventions which plaintiff alleged were derived from the results of studies done under the CTAs.  First Am. Compl. ¶¶ 147-60.  This court has found the government in breach of both sets of agreements.  *See Gilead Scis., Inc.*, 163 Fed. Cl. at 128; *see also Gilead Scis., Inc.*, 169 Fed. Cl. at 224.  Relatedly, this case is closely tied to a patent infringement case in the United States District Court for the District of Delaware, *United States v. Gilead Scis., Inc.*, No. 19-2103

---

[2] The recitations that follow do not constitute findings of fact but rather are recitals attendant to the pending motions and reflect matters drawn from the complaint, the parties' briefs, and records and documents appended to the complaint and briefs.

Moreover, given the lengthy nature of this case and the many orders and opinions which have been issued, the court assumes general familiarity with the fundamental facts and allegations at play.  As such, the court does not repeat with great specificity these details, as they have already been set forth on numerous occasions.

(D. Del., filed Nov. 6, 2019) (the "Delaware litigation"), and the parties have synchronized discovery amongst the two cases. Hr'g Tr. 9:23 to 10:19 (Apr. 26, 2022).[3]

As this case has been bifurcated into a liability phase and a separate, ongoing, damages phase, *see* Hr'g Tr. 26:2-5 (Apr. 6, 2021), ECF No. 28, the parties entered into the damages phase following the conclusion of the liability phase in January of 2024. *See* Joint Status Report of Feb. 1, 2024, ECF No. 183. The parties proposed a mutually agreeable discovery schedule governing the damages phase, and in its February 5, 2024, discovery scheduling order, the court adopted the parties' proposed discovery schedule and established limits on the scope of discovery. *See* Discovery Scheduling Order of Feb. 5, 2024.

This discovery dispute concerns the propriety of redactions that Gilead applied to records documenting the attorneys' fees and costs it claims were caused by the government's breach of the MTAs and CTAs. *See* Def.'s Mot. at 3; Pl.'s Opp'n at 6-7. Specifically, this documentation was provided in support of plaintiff's damages contentions relating to attorneys' costs and fees arising from four entities: Wilmer, Hale, Pickering Hale and Dorr LLP ("WilmerHale"), Sidley Austin LLP ("Sidley"), KPMG International Limited ("KPMG"), and Richards, Layton & Finger P.A. ("Richards Layton"). *See generally* Def.'s Ex. 2. The records covered work on three projects: pre-suit investigations,[4] *inter partes review* ("IPR") proceedings,[5] and the Delaware litigation to which this case is closely tied. *See id.*[6] In support of these claimed costs and fees, plaintiff produced to the government 183 documents, many of which contain time entries redacted as protected as attorney-client privileged or work product. Def.'s Mot. at 3; *see, e.g.*, Def.'s Ex. 3; Pl.'s Ex. 3. In total, Gilead represents it has "already produced 3,361 pages of documents," many of which are "completely unredacted," and that following the government's filing of its motion to compel, "Gilead has since provided the government with additional documents in response to the government's requests for production." Pl.'s Opp'n at 1-2, 1 n.1.

In a February 23, 2024, correspondence, the government asserted that the redactions to the materials plaintiff had produced by that point "denied the [g]overnment (and the [c]ourt) the

---

[3] On March 22, 2024, the District Court for the District of Delaware issued its final judgment in the Delaware litigation, which denied the government's motion for a new trial, granted in part and denied in part the government's motion for judgment as a matter of law or alternatively for a new trial, and overturned the jury's finding that there was no direct patent infringement. *See United States v. Gilead Scis., Inc.*, No. 19-2103, ECF Nos. 496-98.

[4] Gilead's claimed fees and costs with respect to pre-suit investigation and negotiation work done by WilmerHale [***]. Def.'s Ex. 2, at 4.

[5] Gilead's claimed fees and costs with respect to IPR proceedings work done by Sidley Austin [***]. Def.'s Ex. 2, at 8-9; Def.'s Ex. 5.

[6] Gilead's claimed fees and costs with respect to work on the Delaware litigation done by KMPG, Richards Layton, and WilmerHale [***]. Def.'s Ex. 2, at 12. Of this claimed amount, the government asserts that [***] of the cost, attributable to work done by KPMG, is supported by unredacted invoices, as opposed to redacted ones. Def.'s Mot. at 4.

opportunity to meaningfully analyze the reasonableness of Gilead's claimed fees, a required element for establishing a contract damages claim to legal fees." Def.'s Mot. at 6; Def.'s Ex. 8. Accordingly, the government requested production of the unredacted versions of the at-issue documentation by March 15, 2024. Def.'s Ex. 8, at 3. In turn, plaintiff reiterated the propriety of the contract damages it sought and the documents it provided in support, but did not otherwise justify the protections that it asserted with respect to the redacted documentation. Def.'s Ex. 10. The parties then engaged in an hour-long conference on March 6, 2024, during which counsel for plaintiff emphasized "its position that the reasonableness of its legal fees was not a required element of its damages claim, and regardless, that there was no basis to challenge their broad assertion of the attorney/client privilege over time entries on the redacted invoices and Delaware Billing Spreadsheet." Def.'s Mot. at 7; *see also* Def.'s Ex. 11.

Thereafter, plaintiff proposed "to produce each firm's invoices with the billing rates unredacted (which has since been produced)," "to provide time entries for the work done by WilmerHale in relation to the pre-suit investigation, by Richards Layton & Finger ('RLF') in relation to the Delaware Litigation, and by Sidley Austin in relation to the IPRs, with limited redactions for privilege, similar to the Delaware Billing Spreadsheet," and "to review and potentially narrow certain redactions on time entries in the Delaware Billing Spreadsheet if the government identified specific entries of concern." Pl.'s Opp'n at 8; *see also* Def.'s Ex. 12. The government rejected this proposal, on the basis that it "offered no timeline for removing redactions, was silent on pending requests for additional documents, including billing guidelines and engagement agreements, and failed to address the [g]overnment's concerns about evaluating the allocation of fees" between the case before this court and the Delaware litigation. Def.'s Mot. at 7; Def.'s Ex. 13.

On March 14, 2024, the government filed this motion to compel. Def.'s Mot. On March 18, 2024, in response to the government's February 16, 2024, requests, Gilead "agree[d] to produce documents showing attorneys' billing rates, outside counsel engagement agreements and alternative fee arrangements for costs Gilead is seeking to recover, payments by Gilead for costs that it is seeking to recover, and outside counsel billing guidelines." Pl.'s Opp'n at 8-9. On March 20, 2024, Gilead "produced documents showing the billing rates for the work related to Gilead's damages claims," and eight days later produced engagement letters for each firm for which legal fees are being sought. *Id.* at 9. In its reply, the government acknowledges the production of these engagement letters, but laments that they "provide few details of the terms of the representations" they cover, and notes that they do not cover "certain activities, such as WilmerHale's 2016-17 pre-suit investigation." Def.'s Reply at 8 n.10 (citing Def.'s Ex. 16). During a conference held on April 2, 2024, Gilead's counsel indicated it was continuing to search for its "[***] and similar documents." *Id.*

**STANDARDS FOR DECISION**

Rule 26 of the Rules of the Court of Federal Claims ("RCFC") provides that, unless otherwise restricted, the scope of discovery is limited to:

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

4

stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

RCFC 26(b)(1).

The attorney-client privilege and work product doctrine are common law protections meant to "promote[ ] confidential relations" and "protect[ ] [an] attorney's thought processes and legal recommendations," respectively. *Zenith Radio Corp. v. United States*, 764 F.2d 1577, 1580 (Fed. Cir. 1985) (internal citation and quotation marks omitted). In the discovery context, "[t]he assertion of privileges is strictly construed because privileges impede full and free discovery of the truth." *Energy Cap. Corp. v. United States*, 45 Fed. Cl. 481, 484 (2000).

Under RCFC 26(b), privileges may limit the scope of discovery, but may be expressly or impliedly waived, and the party claiming a privilege has the burden to show it has not been waived. *Kansas City Power & Light Co. v. United States*, 139 Fed. Cl. 546, 560-61 (2018). For instance, attorney-client privilege and work product protection may be impliedly waived when a party seeks attorneys' fees, thereby placing the otherwise-privileged material "at issue." *Energy Cap. Corp.*, 45 Fed. Cl. at 486. The reasoning behind finding an implied waiver in such a case is that "'[a]s a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole.'" *Id.* (quoting *Ideal Elec. Security Co. v. Int'l Fidelity Ins. Co.*, 129 F.3d 143, 151 (D.C. Cir. 1997)). Absent waiver, certain types of attorney work product is only discoverable if the requesting party demonstrates a "substantial need [for] the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent . . . by other means." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301-02 (Fed. Cir. 2006) (quoting Fed. R. Civ. P. 26(b)(3)).[7]

RCFC 33 governs interrogatories directed at parties to a case. The Federal Circuit has recognized that "[c]ontention interrogatories," specifically, "serve an important purpose in helping to discover facts supporting the theories of the parties" and that "answers to contention interrogatories evolve over time as theories of liability and defense begin to take shape; answers to those interrogatories may not come into focus until the end of discovery." *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012). As such, pursuant to RCFC 26(e), "as theories mature and as the relevance of various items of evidence changes, responses to interrogatories, and particularly contention interrogatories, [must] be corrected or supplemented to reflect those changes." *Id.* (discussing Fed. R. Civ. P. 26(e)).

RCFC 37 provides that "a party may move for an order compelling disclosure or discovery," after the movant has provided notice "to other parties and all affected persons." RCFC 37(a). Further, RCFC 37(a)(4) provides that "[f]or purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response" to a discovery request "must be treated as

---

[7] Because the discovery rules of this court mirror those of the Federal Rules of Civil Procedure, the rules should be interpreted *in pari materia*.

a failure to disclose, answer, or respond." RCFC 37(a)(4). A decision that concerns "the scope and conduct of discovery" is committed to the trial court's discretion. *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed. Cir. 1986). Such a decision requires the court to "balance potentially conflicting goals," *Petro-Hunt, L.L.C. v. United States*, 114 Fed. Cl. 143, 144 (2013), while recognizing that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation," *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) (analyzing discovery under the Federal Rules of Civil Procedure). RCFC 37 also provides that sanctions may be warranted when a party fails to produce required information in discovery. RCFC 37(c)-(d).

To establish damages for breach of contract, the party seeking the damages award must show that: "(1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). And when attorneys' fees and costs are sought as contractual damages, these fees and costs must be reasonable. *See, e.g.*, *SUFI Network Servs., Inc. v. United States*, 785 F.3d 585, 593-94 (Fed. Cir. 2015). The "party seeking a fee award has the burden of proving reasonableness," and the reasonableness of attorneys' fees and costs is generally determined using the lodestar method, which "involves multiplying the number of hours by an hourly rate" for the legal work in question. *Id.* at 594; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (identifying the lodestar method as "the most useful starting point for determining the amount of a reasonable fee").

"In general, courts have required a party seeking an award of attorneys' fees to present detailed, contemporaneous time records." *Energy Cap. Corp.*, 45 Fed. Cl. at 487 (collecting cases). While these records need not document "in great detail how each minute of [their] time was expended," the entries should "enable a reviewing court to identify distinct claims" and should at minimum "identify the general subject matter of [their] time expenditures." *Hensley*, 461 U.S. at 437, 437 n.12 (assessing the disclosure requirement in the context of an attorneys' fee statute).

## ANALYSIS

Pursuant to RCFC 37, the government seeks to compel production of the unredacted copies of documentation Gilead provided in support of its damages contentions. Def.'s Mot. at 1.[8] The government avers that unredacted invoices are necessary to establish the reasonableness

---

[8] As an alternative to compulsion, the government requests that this court sanction Gilead in the form of "strik[ing] any portion of Gilead's damages contentions that rely, in whole [or in] part" on the redacted documents at issue. Def.'s Mot. at 12. This court has identified two instances in which such sanctions could be warranted: (1) when "there is a total failure to respond to the discovery requests" or (2) when there is an "evasive or misleading response [that] is tantamount to no response at all." *Sci. Applications Int'l Corp. v. United States*, 163 Fed. Cl. 257, 274 (2022) (citing *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1363 (Fed. Cir. 1990)). The court agrees with Gilead that this case falls in neither category, Pl.'s Opp'n at 10-13, and as such, sanctions are not appropriate at this time.

of plaintiff's claimed fees and, as such, plaintiff has waived any claim of privilege over the unredacted documents. *Id.* at 8-12.[9]

First, the government avers that the unredacted invoices are necessary to establish the reasonableness of Gilead's claimed damages. Def.'s Mot. at 8-9. Second, the government contends that by claiming attorneys' costs and fees, Gilead has waived any claim of privilege to the unredacted documents supporting that claim. *See id.* at 9-11; *see also* Def.'s Reply at 8 (contending that Gilead's "general allegations do not establish 'reasonableness' or supplant the [g]overnment's right to challenge the reasonableness of Gilead's fees and costs by fully analyzing the time entries on its billing records"). Ultimately, the government objects to what it characterizes as Gilead's "strained view of the law" under which "Gilead essentially argues that the [g]overnment (and the [c]ourt) should simply accept the reasonableness of all its asserted fees based on Gilead's own characterization of the CFC and Delaware litigations and its choice of supporting documents, which it has heavily or wholly redacted as it sees fit." Def.'s Reply at 7-8.

Moreover, the government asserts that Gilead has placed at issue various matters that cannot be sufficiently assessed absent the unredacted invoices the government requests. Def.'s Reply at 7-9. Specifically, the government expresses concern that the fees Gilead claims may be "grossly excessive," *id.* at 8 (citing Def.'s Ex. 15), and that this raises "issues of moral hazard, a key policy underlying the reasonableness requirement." *Id.* (citing *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, 200 F.3d 518, 521 (7th Cir. 1999)). Additionally, the government argues that Gilead has placed at issue both "its degree of success in the Delaware litigation" as well as the "allocation of fees between the CFC and Delaware litigations." *Id.* at 9. Both issues, the government avers, require examination of the unredacted invoices in question, in order to ensure the government does not "pay for items on which it prevailed" in the Delaware litigation, and that the allocation of fees was appropriate with respect to the fees Gilead seeks. *Id.*[10]

---

[9] The government contends this motion is not premature, because it "relates solely to the 'supporting' documents already provided by Gilead, which due to excessive redactions, fall short of what was contemplated for Gilead's contentions" in the discovery scheduling order governing the damages phase of this case. Def.'s Reply at 10. On the other hand, Gilead asserts that because "serving contentions is not the end of discovery, but the beginning," the government may continue seeking discovery until the fact discovery deadline of July 8, 2024. Pl.'s Opp'n at 12-13. While contentions mark the beginning of discovery rather than the end, the government's motion to compel is not premature. RCFC 37(a) permits the motion to be made following provision of notice, which has been given in this case. RCFC 37(a). As such, the court agrees that this motion is ripe for resolution at this time.

[10] The government also asserts that there is no justification for redacting billing rates from the invoices at issue as third-party confidential, given that the protective order governing this case "directly addresses th[is] issue[]" by protecting "restricted information" including "'material that contains information received in confidence from vendors, suppliers, and/or other third parties.'" *See* Def.'s Mot. at 11-12 (quoting ECF No. 50 at 3). Because Gilead represents that on March 20, 2024, it "produced documents showing the billing rates for the work related to

Gilead opposes the government's motion to compel on two main grounds. First, Gilead asserts that its damages contentions and supporting documents are sufficient to explain the basis for the damages it claims. *See* Pl.'s Opp'n at 10-13. Specifically, Gilead avers that its timely served damages contentions "provid[ed] an element-by-element explanation of the bases of its claimed damages for each category of damages Gilead seeks to recover," and "laid out how each set of legal fees and costs pertaining to each category of damages sought—pre-suit investigations, IPR petitions, and the Delaware Patent Litigation—were calculated and derived from the various produced documents." *Id.* at 10-11.

Gilead asserts that, with respect to pre-suit investigation work conducted by WilmerHale and IPR petition work conducted by Sidley Austin, Gilead has produced invoices demonstrating the fees incurred, which "further show the specific hours billed by timekeeper and date," and that Gilead additionally provided explanations as to "why these fees and costs meet each element for contract damages." Pl.'s Opp'n at 11. Moreover, Gilead asserts that it "has agreed to produce time entries for these invoices, properly redacted for privilege, and has already produced the billing rates that pertain to these invoices," for both categories of work. *Id.*

With respect to Delaware litigation work, Gilead indicates it has produced a billing spreadsheet containing "more than 37,000 detailed time and cost entries for all work done by WilmerHale" and that "[c]ontrary to the government's description, the Delaware Billing Spreadsheet includes columns showing the invoice number, invoice date, timekeeper name and level of experience, work date, hours billed, billed amount, line-item descriptions of the work, and—importantly—the basis (attorney-client privilege and/or work product) and subject matter (for example, 'Non-Infringement Defenses' or 'Invalidity Defenses') for a given redaction." Pl.'s Opp'n at 11-12. Additionally, Gilead asserts that about 23,000 of the 35,000 time entries relating to the Delaware litigation contain no redactions whatsoever, but that the government's modified version of the billing spreadsheet "misleadingly omits all the unredacted entries and the column explaining the reason for the redactions and the bases of the asserted privilege, which provides sufficient information to determine reasonableness of its fees." *Id.* at 12. Relatedly, Gilead contends that "serving contentions is not the end of discovery, but the beginning," and therefore that its contentions need not "provide all information that the parties might consider relevant" at the outset. *Id.* at 12-13. In this connection, Gilead asserts that the government may serve additional discovery requests as needed, and as such compulsion is unnecessary at this point. *Id.*

Second, and fundamentally, Gilead maintains that it did not waive privilege or work product protections with respect to its legal invoices by seeking attorneys' fees and costs as part of its contract damages. Pl.'s Opp'n at 13-19. Specifically, Gilead asserts that "courts have routinely held that attorneys' bills may be redacted for privileged information, even when a party is seeking attorneys' fees." *Id.* at 13. In this vein, Gilead avers that the need to maintain its asserted privilege is all the more "acute" in this case "given that this litigation is ongoing." *Id.* at 14. Indeed, Gilead represents that it "expects the government to appeal the judgment in the

---

Gilead's damages claims," Pl.'s Opp'n at 9, the court considers the issue of billing rate redaction to be resolved at this time. *See* Hr'g Tr. 6:7-10 (Apr. 17, 2024).

Delaware action soon, and producing the privileged information sought in the time and cost entries would undoubtedly provide the government with insight into Gilead's trial strategies and theories as it begins developing its appeal strategy in the Delaware [l]itigation. In addition, the government continues to seek related patents." *Id.* at 14-15; *see also* Hr'g Tr. 23:3-10 (Apr. 17, 2024). Gilead also attempts to distinguish the government's need for unredacted invoices based on the context of damages sought. It asserts that "there is no reasonableness requirement in contract damages," so "the government's purported need to review the [ostensibly] privileged information is even lower, because the fees do not need to be as closely scrutinized as they would in a statutory fee-shifting context." Pl.'s Opp'n at 15-16. Finally, Gilead avers that even if it did have the burden of showing reasonableness of its claimed costs and fees, "it has provided more than sufficient information for the government to make that assessment for purposes of responding to contentions at this stage of the case." *Id.* at 16.

As a threshold matter, the court agrees with the government's assertion that "a reasonableness requirement attaches to attorney's fees and costs sought as breach-of-contract damages, just as it does in statutory, post-judgment awards." Def.'s Mot. at 9.[11] Indeed, this court has articulated a reasonableness requirement with respect to attorneys' fees and costs in past cases. *See, e.g.*, *Kansas City Power & Light Co.*, 139 Fed. Cl. at 572; *see also Energy Capital Corp.*, 45 Fed. Cl. at 484-87. And Gilead does not provide any binding precedent directly establishing that attorneys' fees occasioned by a breach need not be reasonable. Pl.'s Opp'n at 16.[12] Instead, the case it cites concluded that a party seeking damages "need not offer

---

[11] In reaching this conclusion, the court acknowledges a reality that both parties have conceded: this case presents a somewhat novel issue, in that it involves a party seeking attorneys' fees and costs as contract damages from an opposing party in the case itself. *See* Hr'g Tr. 40:25 to 41:1-2 (Apr. 17, 2024) ("I do think this case is novel. I don't think there's a case like it."); *id.* 41:10-13 ("I agree with Mr. Machen, this case is novel. We haven't seen a claim for fees of this type against the [g]overnment through cont[r]acts.").

[12] Moreover, as the government emphasizes, "Gilead never addresses this [c]ourt's decision in *Kansas City Power & Light*," where "this [c]ourt plainly stated that, to prevail on a contract claim for attorney's fees, a 'plaintiff must at least show that the claimed fees are reasonable.'" Def.'s Reply at 3 (quoting 139 Fed. Cl. at 572). And although, as the government notes in its reply, Gilead "does address this [c]ourt's decision in *Energy Capital Corporation* . . . arguing that its application should be limited to that case's narrow facts," "Gilead does not address its broad statement that '[i]n general, courts have required a party seeking an award of attorneys' fees to present detailed, contemporaneous time records.'" Def.'s Reply at 3 n.4 (quoting *Energy Capital Corp.*, 45 Fed. Cl. at 487). Indeed, this broad assertion indicating that detailed time records are required for an assessment of attorneys' fees, an assertion with which Gilead does not grapple, is significant to this court's assessment that such records are required in this case.

Relatedly, the government avers that the choice of law provisions in the MTAs and CTAs should govern the court's decision in this case. Def.'s Mot. at 10-11 (citing ECF Nos. 34-4 at 4; 34-6 at 3; 34-7 at 4; 34-13 at 3; 34-27 at 3). As Gilead articulates, however, these choice of law provisions govern the interpretation of the contracts themselves, and "the question presented" to

9

any *affirmative* evidence" that its damages sought are reasonable but did not hold that contract damages need not be reasonable. *Realtek Semiconductor, Corp. v. LSI Corp.*, 12-cv-3451, 2014 WL 2738216, at *3 (N.D. Cal. June 16, 2014) (emphasis added).[13]

Having determined that attorneys' fees and costs must be reasonable to be recoverable, the court now considers whether Gilead must produce unredacted versions of its legal invoices and billing records to allow for an assessment of reasonableness. In general, the court agrees with the government that "[g]iven the reasonableness requirement in [Gilead's] fee claim," Def.'s Mot. at 9, Gilead must produce supporting documentation which is sufficiently detailed to allow for a determination of whether the claimed costs and fees are reasonable, because the government "is not required to blindly accept that the claimed dollar amount is reasonable." *Kansas City Power & Light Co.*, 139 Fed. Cl. at 572) (citing *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 731 (8th Cir. 2002)).

While this court acknowledges Gilead's assertion that "courts—including the Federal Circuit—have routinely held that attorney-client privilege is not automatically waived simply by seeking legal fees," Pl.'s Opp'n at 17 (citing *Avgoustis v. Shinseki*, 639 F.3d 1340, 1346 (Fed. Cir. 2011)), this assertion paints with too broad a brush. Indeed, although the Federal Circuit in *Avgoustis v. Shinseki* did conclude that statutorily-required billing entry disclosures pursuant to the Equal Access to Justice Act could be done in a sufficiently generic way to preserve privilege, it nonetheless affirmed that the billing disclosures needed to be detailed enough to "describe the purpose of the activity sufficiently to determine if the charges were reasonable." 639 F.3d 1340, 1341, 1345-46; *see also* Def.'s Reply at 7. As a general principle, documents produced in support of a party's damages claim must contain sufficient detail to allow for an independent determination of whether the claimed costs and fees sought are reasonable.

Ultimately, by placing its attorney's fees and costs at issue, Gilead has waived attorney-client privilege and work product protection over the underlying documents supporting its claim.[14] In *Energy Capital Corp. v. United States*, this court recognized waiver of attorney-

---

the court here "is not about contract interpretation, but privilege." Pl.'s Opp'n at 10 n.5. As such, this court follows the standard approach with respect to the governing law in this case, not that defined by the contractual choice of law provisions the government cites.

[13] For this reason, the court agrees with the government's characterization that *Realtek* speaks to the issue of "*burden of proof* for a fees claimant facing a mitigation defense, not an evaluation of attorney's fees as contract damages." Def.'s Reply at 3 n.3 (emphasis added).

[14] During this court's motion hearing, counsel for Gilead expressed concern that the government is "also seeking all entries for work product" which Gilead avers is subject to "a higher standard." Hr'g Tr. 18:7-12 (Apr. 17, 2024). Counsel for the government, however, forestalled this concern by conceding that the government is "not seeking waiver of the underlying work" itself, but rather only time entries. *Id.* 27:20-25. As such, this court addresses waiver of the work product protection only to the limited extent of the "very clearly defined" "scope," *id.* 28:6-7, of time entries the government represents it seeks, not the underlying work product these entries may reference.

client privilege and work product protection when attorneys' fees and costs are put at issue in a case, including when these fees and costs are sought as contract damages. *See* 45 Fed. Cl. at 484-87.  In that case, plaintiff, Energy Capital Corporation, sued the United States Department of Housing and Urban Development for breach of contract. *Id.* at 483.  Plaintiff's claim for damages included attorneys' fees and costs. *Id.* at 483-84.  During discovery, the government sought the "production of documents that show[ed] the involvement of certain law firms that worked for Energy Capital," including "billing records of their various law firms." *Id.* at 484.  Plaintiff, in turn, objected "to providing complete and unredacted bills based on 'attorney-client privilege and the work-product doctrine.'" *Id.*  Ultimately, recognizing that "[i]n general, courts have required a party seeking an award of attorneys' fees to present detailed, contemporaneous time records" to support their claimed damages, *id.* at 487 (collecting cases), the court "ordered the production of the complete, unredacted bills because they are the most complete documents." *Id.* at 486.  In doing so, the court also forestalled any distinction based on the type of award sought.  It noted that although the cases in which courts have generally ordered disclosure of unredacted invoices "did not involve a party seeking attorneys' fees as an item of costs for breach of contract," the same "general principle" used in those cases "guide[d] the [c]ourt's decision" in the case before it which did seek such costs and fees as contractual damages. *Id.* at 487.

While the court is sensitive to the fact that an appeal in the closely related Delaware litigation could soon be pending, this is not, as Gilead suggests, a sufficient reason to decline to follow the well-established approach of finding a waiver of privilege over underlying invoices and billing records when attorneys' fees and costs are sought.  Gilead is apprehensive that, in requesting the unredacted records at issue, the government is seeking "Gilead's trial strategies and theories." Pl.'s Opp'n at 14-15, 18.  In expressing this concern, Gilead essentially seems to ask this court to employ a sort of balancing test, whereby Gilead's need to protect information potentially relating to legal strategy would be weighed against the government's need for the requested information. *See id.*  Yet, in the context of waiver—unlike in cases where protected work product is sought absent waiver—such a balancing exercise is not applied. *See generally Energy Capital Corp.*, 45 Fed. Cl. 481; *Kansas City Power & Light Co.*, 139 Fed. Cl. 546.  As such, that the unredacted legal invoices and billing records supporting Gilead's claimed costs and fees may reveal some level of strategy detail with respect to a possible appeal in the Delaware litigation does not prevent their production in this case.  Rather, by placing its attorneys' fees and costs at issue in this case, Gilead has waived its privileges over the corresponding unredacted billing records and legal invoices which support these damages contentions.

## CONCLUSION

For the reasons set forth above, the government's motion to compel is **GRANTED**.  Plaintiff is directed to produce the unredacted legal invoices and billing records relied upon in support of their damages contentions no later than May 14, 2024.

It is so **ORDERED**.

s/ Charles F. Lettow<br>
Charles F. Lettow<br>
Senior Judge